# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 20

OCTOBER TERM, A.D. 2015

*February 17, 2016*

DENNIS ANTHONY POITRA, JR.,

**Appellant**
**(Defendant),**

v.                                                            S-15-0115

THE STATE OF WYOMING,

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Sheridan County*
*The Honorable John G. Fenn, Judge*

*Representing Appellant:*
    Office of the Public Defender:  Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel

*Representing Appellee:*
    Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    Appellant Dennis Anthony Poitra, Jr., filed a motion to reduce his sentence of life without the possibility of parole to life as a matter of law.  In support of his motion, he argued before the district court that because two juvenile codefendants may receive life sentences with the possibility of parole due to a United States Supreme Court decision and changes in the Wyoming Statutes, his sentence should be the same because he was just over the age of majority and no more mature when the crimes were committed.

[¶2]    On appeal, Poitra argues that his sentence violates the Eighth Amendment prohibition against cruel and unusual punishment and denies him equal protection under the Fourteenth Amendment.[1]   Because the constitutional issues were not raised below, because the equal protection argument is not cogently presented on appeal, and because the Eighth Amendment claim is not of a fundamental nature, we affirm.

## ISSUES

[¶3]    We restate the issues as we have been able to distill them from the briefs as follows:

1.      Can Poitra raise an Eighth Amendment cruel and unusual punishment claim for the first time on appeal?

2.      Can Poitra raise a Fourteenth Amendment equal protection claim for the first time on appeal?

3.      If neither claim was preserved, did the district court abuse its discretion in denying the motion for sentence reduction?

## FACTS

[¶4]    Mr. Poitra was convicted of felony first-degree murder, aggravated burglary, and conspiracy to commit aggravated burglary for the part he played in the murder of Sheridan resident Robert Ernst in 2009.  The acts that led to that conviction, and to the convictions of his codefendants, Wyatt Bear Cloud and Dharminder Vir Sen, are described in greater detail in *Poitra v. State*, 2012 WY 58, 275 P.3d 478 (Wyo. 2012) (*Poitra I*), *Bear Cloud v. State*, 2012 WY 16, 275 P.3d 377 (Wyo. 2012) (*Bear Cloud I*), *cert. granted & judgment vacated by* 133 S.Ct. 183, 184 L.Ed.2d 5 (2012), and *Sen v. State*, 2013 WY 47, 301 P.3d 106 (Wyo. 2013).

---

[1] Arguments based upon constitutional violations are usually brought through a motion to correct an illegal sentence pursuant to Wyoming Rule of Criminal Procedure 35(a).

[¶5]     Poitra had just turned nineteen when the crimes were committed.  Bear Cloud was sixteen, and Sen was fifteen.  It is not necessary to restate the facts leading to their convictions in detail, but we will provide a brief summary for context.  At some point, Poitra joined in a plan the two juveniles had conceived to commit home invasion robberies.  Bear Cloud and Sen had broken into a pickup truck and stolen a 9 mm handgun, and the group somehow also collected a knife and a landscaping timber to be used as a club.  They donned black bandanas and dark clothing to conceal their identities during the planned nighttime robberies.

[¶6]     Poitra, carrying the handgun and a knife, cut a screen covering an open window at the Ernst home in the early hours of August 26, 2009.  He entered the dwelling and let Bear Cloud and Sen in through a door.  The group found a little cash, and Sen evidently decided to scare the Ernsts into opening a safe on the premises in the hopes of finding more to steal.  He took the gun from Poitra, and the two of them entered the Ernsts' bedroom.  Sen said something that woke Mr. Ernst, who told them to get out of his house.  Sen then shot him three times, killing him.

[¶7]     Poitra was tried and sentenced to life without possibility of parole on the felony first-degree murder conviction, and to twenty to twenty-five years for the crimes of conspiracy to commit aggravated burglary and aggravated burglary.  The sentences are to run consecutively.  We affirmed the convictions and sentences in *Poitra I, supra*.

[¶8]     Because Poitra refers to the fate of his codefendants, we will briefly digress to explain their appeals in limited fashion.  Bear Cloud pled guilty to first-degree felony murder, as well as conspiracy to commit aggravated burglary and aggravated burglary.  He was sentenced to life as a matter of law on the murder conviction, and we affirmed each of his convictions and sentences in *Bear Cloud I,* ¶ 2, 275 P.3d at 383.

[¶9]     Bear Cloud petitioned the United States Supreme Court for certiorari, which was granted.  That Court vacated the judgment against him and remanded to us for reconsideration of his sentence in light of *Miller v. Alabama*, 567 U.S. ----, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), which it decided after we had rendered our decision in *Bear Cloud I*.  In *Miller*, the Court held that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without a realistic possibility of parole for juvenile offenders.  132 S.Ct. at 2469.  The decision requires an individualized sentencing hearing before a life sentence without possibility of parole could be imposed on a juvenile.  We held on remand that the possibility of executive clemency under Wyoming Statutes did not provide the equivalent of a realistic possibility for parole, and that Wyoming's sentencing and parole scheme therefore violated the Eighth Amendment under *Miller*. *Bear Cloud v. State*, 2013 WY 18, ¶ 34, 294 P.3d 36, 45 (Wyo. 2013) (*Bear Cloud II*).  We remanded to the district court with instructions to conduct the individualized

2

sentencing hearing required by *Miller*, which could require it to set a date upon which Bear Cloud would become eligible for parole on his murder conviction.[2]

[¶10] Dharminder Vir Sen was convicted of first degree murder, aggravated burglary, and conspiracy to commit aggravated burglary for his participation in the crimes already described. He was sentenced to life without the possibility of parole on the murder conviction. He appealed his convictions and his sentences. We affirmed the convictions, but we also vacated all sentences and remanded for resentencing consistent with *Miller* and *Bear Cloud II. Sen*, ¶ 52, 301 P.3d at 127-28.[3,4]

[¶11] Poitra timely sought a sentence reduction under Wyoming Rule of Criminal Procedure 35(b).[5] He asked the district court to reduce his sentence for the murder conviction to life as a matter of law from life without possibility of parole. Such a reduction could allow the Governor of the State of Wyoming to commute his sentence to a term of years, which might in turn allow him parole at some unknown time.[6] The State

---

[2] Bear Cloud returned to this Court once again after resentencing in *Bear Cloud v. State*, 2014 WY 113, 334 P.3d 132 (Wyo. 2014) (*Bear Cloud III*). In this third appeal he argued, among other things, that the aggregate sentences imposed for felony murder, accessory to aggravated burglary, and aggravated burglary created a de facto sentence of life without possibility of parole in violation of the Eighth Amendment and *Miller v. Alabama*. We remanded for the district court to conduct an individualized sentencing hearing and reconsider the aggregate effect of the sentences in light of *Miller* and *Bear Cloud II*.

[3] In 2013, the Wyoming legislature weighed in, amending existing statutes to provide that persons under the age of eighteen at the time they committed first degree murder "shall be punished by life imprisonment," but adding that they shall nonetheless be eligible for parole after serving twenty-five years of incarceration. 2013 Wyo. Sess. Laws, ch. 18, § 1 (amending Wyo. Stat. Ann. §§ 6-2-101(b) and 6-10-301(c)). In his briefing, Poitra did not refer to this statute, which by its terms clearly does not apply to him because he was over the age of eighteen years when the crime was committed.

[4] We remanded Mr. Sen's case once again on the stipulation of the parties that the aggregate sentences he received should be reviewed under *Bear Cloud III*. Order, *Sen v. State*, 2014 WY 148, 337 P.3d 1156 (Wyo. 2014).

[5]
> (b) *Reduction*. -- A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within one year after the sentence is imposed or probation is revoked, or within one year after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within one year after entry of any order or judgment of the Wyoming Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision. The court may determine the motion with or without a hearing.

W.R.Cr.P. 35(b).

[6] "A sentence of life or life imprisonment which is not specifically designated as a sentence of life imprisonment without parole is subject to commutation by the governor. A person sentenced to life or

---

objected to any sentence reduction, and the district court held a hearing on the application.

[¶12] The district court denied Poitra's motion for sentence reduction, referring to his extensive juvenile record and his turbulent history in the Sheridan County Detention Center and then the Wyoming State Penitentiary. It found that he was an ongoing threat to public safety. It also noted that Poitra's case was different from his juvenile codefendants because he was an adult at the time the murder was committed. His case therefore did not fall within the requirements of *Miller v. Alabama* and *Bear Cloud II*, which narrowly apply to juveniles who must be under the age of eighteen.

[¶13] Poitra timely perfected this appeal.

## STANDARD OF REVIEW

[¶14] Poitra now argues on appeal that his life sentence without the possibility of parole violates the Eighth Amendment prohibition against cruel and unusual punishment, as well as the Equal Protection Clause of the Fourteenth Amendment. If these issues could be considered by this Court, such questions of law would be reviewed de novo, rather than for an abuse of discretion as they would normally be for denial of a motion for sentence reduction. *Compare Bear Cloud III*, ¶ 13, 334 P.3d at 137 *with Boucher v. State*, 2012 WY 145, ¶ 6, 288 P.3d 427, 429 (Wyo. 2012). However, as further explained *infra*, his constitutional issues are either not cogently presented or not of such a fundamental nature that this Court will consider them for the first time on appeal.

## DISCUSSION

[¶15] The State contends that Poitra did not raise either of the constitutional issues he now asserts in the district court, and that they are therefore waived unless this Court finds them to be jurisdictional or fundamental, citing *Silva v. State*, 2014 WY 155, ¶ 9, 338 P.3d 934, 936 (Wyo. 2014) (quoting *Beldon v. Lampert*, 2011 WY 83, ¶ 11, 251 P.3d 325, 328-29 (Wyo. 2011)), and *Statezny v. State*, 2001 WY 22, ¶ 11, 18 P.3d 641, 644 (Wyo. 2001). It points out that "[i]t is unfair to reverse a ruling of a trial court for reasons that were not presented to it, whether it be legal theories or issues never formally raised in the pleadings nor argued to the trial court," citing *Silva*, ¶ 9, 338 P.3d at 936. It argues that this rule has been applied when the appellant raised constitutional issues regarding sentencing for the first time on appeal, as it contends is the case here, citing *Bhutto v. State*, 2005 WY 78, 114 P.3d 1252 (Wyo. 2005); *Kenyon*

---

life imprisonment is not eligible for parole unless the governor has commuted the person's sentence to a term of years." Wyo. Stat. Ann. § 6-10-301(c) (LexisNexis 2009) (amended 2013, *see* n.3, *supra*) (cited by *Bear Cloud II*, ¶ 32, 294 P.3d at 45).

*v. State*, 2004 WY 100, 96 P.3d 1016 (Wyo. 2004); and *Apodaca v. State*, 571 P.2d 603 (Wyo. 1977). We agree.

[¶16] Our review of his motion indicates that Poitra sought a sentence reduction due to his claimed good behavior while incarcerated, and his pursuit of a G.E.D. and attending anger management classes. In that motion, he also mentioned *Miller v. Alabama* and the possibility that his codefendants, whose cases had been remanded, could be granted an opportunity for parole while they are still young enough to live a meaningful life, although without elaborating on the argument.

[¶17] At the hearing on the motion, Poitra's attorney made it very clear that she was not asking the district court to rule that he might be entitled to parole at all, but only that it should reduce his sentence to life as a matter of law to allow him the remote chance of commutation to a term of years from some future governor, after which he could be considered for parole. Poitra's counsel and the district court discussed the fact that his co-conspirators had a chance at a better fate than that, and specifically mentioned proportionality between their sentences and with the sentences of other juvenile offenders.

[¶18] The record tells us that Poitra did not argue an Eighth Amendment proportionality claim at the hearing. Instead, his contention was that because the juvenile codefendants may receive lesser sentences due to the United States Supreme Court's pronouncement in *Miller*, he should have the same sentence of life according to law because he was only nineteen at the time of the crime. This was an appeal to the district court's sentencing discretion and a call for what he claims was fairness under the circumstances.

[¶19] The record is devoid of anything that would tell the district court that Poitra was claiming that his sentence was unconstitutional under the Eighth Amendment – the limited references to that provision and *Miller* were simply not sufficient to do so. We must therefore find that Poitra did not sufficiently raise the *Miller*/Eighth Amendment issues presented in this appeal.

[¶20] Regarding equal protection, there is no reference in the motion for sentence reduction or in the hearing to the Equal Protection Clause of the Fourteenth Amendment, nor to the current claim that the sentences imposed were somehow an improper classification of individuals similarly situated. Accordingly, we can only conclude that Poitra did not sufficiently raise a Fourteenth Amendment equal protection issue before the district court.

[¶21] The next question then becomes whether the constitutional claims Poitra raises for the first time on appeal are cogent enough to evaluate, and if so, whether they are of

5

such a fundamental nature that we must consider them.[7] *See Crofts v. State ex rel. Dep't of Game & Fish*, 2016 WY 4, ¶ 20, --- P.3d ---, --- (Wyo. 2016). Considering first Poitra's attempt to make a Fourteenth Amendment equal protection claim on appeal, we do not find it cogent or supported by any authority. To successfully present an equal protection claim, Poitra must prove that the law in question is unconstitutional. *See Krenning v. Heart Mtn. Irr. Dist.*, 2009 WY 11, ¶ 33, 200 P.3d 774, 784 (Wyo. 2009). His burden is a heavy one "in that the appellant must 'clearly and exactly show the unconstitutionality beyond any reasonable doubt.'" *Id.* (quoting *Cathcart v. Meyer*, 2004 WY 49, ¶ 7, 88 P.3d 1050, 1056 (Wyo. 2004)). We presume constitutionality, and any uncertainty must be resolved in favor of the law's constitutionality. *Krenning*, ¶ 33, 200 P.3d at 784. "We apply a three-element test requiring: (1) identification of the legislative classification at issue; (2) identification of the legislative objectives; and (3) determination of whether the legislative classification is rationally related to the achievement of an appropriate legislative purpose." *Id.*

[¶22] Poitra did not attempt to satisfy the aforementioned test. We can make of his argument that he is requesting a sentence reduction to life as a matter of law because that would be fair for him. We note that Wyoming statutes in place before *Miller* allowed juveniles to be sentenced to life without parole, and that his juvenile codefendant Sen was so sentenced. We remanded for review of that sentence because of the United States Supreme Court's ruling in *Miller*. The proposition that *Miller*, applicable Wyoming Statutes, the exercise of discretion by the sentencing judge, or a combination of all three, violated Poitra's right to equal protection is unsupported by pertinent authority. We therefore decline to consider it. *Manzanares v. State*, 2015 WY 63, ¶ 18, 349 P.3d 969, 972 (Wyo. 2015) (explaining that this Court will not consider issues which are not clearly defined or supported by proper citation or cogent argument).

[¶23] On the other hand, the Eighth Amendment issue raised in this Court is comprehensible, but it is not of such a fundamental nature to warrant our consideration when it was not presented to the district court. *See Crofts*, ¶ 24, --- P.3d at --- ("An appellant's assertion of a 'fundamental right' does not necessarily persuade this Court to consider the issue for the first time on appeal."). Poitra makes an argument that is difficult to relate to *Miller v. Alabama*, as he asks only that we somehow find that ripples emanating from that case or the Eighth Amendment required the district court to reduce a sentence of life without the possibility of parole to one of life as a matter of law. *Miller*, on the other hand, directly requires consideration of a meaningful opportunity to parole for those whose crimes were committed when they were under the age of eighteen. 132 S.Ct. at 2469, 2482 (the latter Justice Thomas' summary of the holding); *see also Roper v. Simmons*, 543 U.S. 551, 568, 125 S.Ct. 1183, 1194, 161

---

[7] We have also held that we may consider jurisdictional issues raised for the first time on appeal. *Silva*, ¶ 9, 338 P.3d at 936-37 (quoting *Belden*, ¶ 11, 251 P.3d at 328-29, which quotes *Erwin v. State, Dep't of Fam. Servs.,* 2010 WY 117, ¶ 15, 237 P.3d 409, 414 (Wyo. 2010)). We perceive no possible argument that the district court lacked jurisdiction and therefore do not address that ground for review.

6

L.Ed.2d 1 (2005) (holding that imposing the death penalty on a juvenile, a person under the age of eighteen years, violated the Eighth Amendment).[8]  The district court questioned the practical difference between life without parole and life as a matter of law as it might relate to *Miller*, and neither the court nor counsel could think of a case in which a Wyoming governor had commuted a first degree murder conviction of life as a matter of law to a term of years so as to give the Board of Parole jurisdiction to consider release.[9]  In other words, Poitra is not really arguing for the kind of relief *Miller* and *Bear Cloud II* might provide.

[¶24]  As the State points out, Poitra has not provided any direct authority to show that sentencing him to life without possibility of parole violated *Miller* or the Eighth Amendment.  He was an adult at the time the murder was committed, and he received the maximum punishment allowable by law, then and now.  It is true that he did not shoot Mr. Ernst, and that he did not procure the shooting.  It is also true, as he argues, that he had a horrible upbringing.  He argues that his brain, like those of his codefendants, was not fully developed at the time of the crimes.  However, he provides us with no scientific evidence of that proposition, although we can see that his criminal behavior began at age eleven and continued virtually unabated into adulthood.

[¶25]  Nonetheless, the law has drawn a bright line at the age of eighteen, and Poitra simply falls on the side of the line allowing a life sentence without the possibility of parole when it might have required a meaningful chance at parole if he was only a little more than a year younger.  We hold the argument does not adequately support a cruel and unusual punishment claim that is of such a fundamental nature that it must be considered for the first time on appeal.

[¶26]  Poitra's arguments seem in substance to be less a constitutional claim and more a veiled contention that the district court abused its discretion when it refused to reduce his sentence to life as a matter of law in light of his many challenges in life and his success in obtaining a G.E.D. high school equivalency certificate in prison.  We have already held that the district court did not abuse its discretion in the sentence it originally handed down.  *Poitra I,* ¶¶ 25-30, 275 P.3d at 484-85.

[¶27]  While we commend Poitra for earning his G.E.D. and seeking help to manage his anger, his prison disciplinary record indicates that little has changed.  The State

---

[8] We have reviewed the United States Supreme Court's most recent pronouncement in this area, *Montgomery v. Louisiana*, 577 U.S. ---, 136 S.Ct. 718 (2016).  In that case, the Court held that *Miller* required a hearing to determine whether a sixty-year-old inmate who killed a sheriff's deputy in 1963 at age seventeen was entitled to consideration for parole after over forty years in prison.  Nothing in that case suggests that Montgomery would have been entitled to any relief if he had been eighteen when he murdered the deputy, consistent with existing case law.

[9] Beyond that, Mr. Poitra would still face consecutive prison terms of twenty to twenty-five years for conspiracy to commit aggravated burglary and aggravated burglary.

presented evidence that he had twenty-three substantiated prison rules violations, some of them serious, within the relatively short time between arriving at the Wyoming State Penitentiary and the date of the hearing.[10]

[¶28]  We have observed that "it would be unwise to usurp what is properly a function of the district courts by finding an abuse of discretion in denying a sentence reduction motion simply because it was supported by evidence of a defendant's commendable conduct while incarcerated." *Chapman v. State*, 2015 WY 15, ¶ 18, 342 P.3d 388, 394 (Wyo. 2015) (quoting *Conkle v. State*, 2013 WY 1, ¶ 14, 291 P.3d 313, 315 (Wyo. 2013)).  It would be at least equally unwise to do so when arguments for an abuse of discretion are cloaked in ill-fitting constitutional garb, and in the face of precious little commendable conduct in prison at that.  The district court did not abuse its discretion in denying the motion for sentence reduction.

[¶29]  Affirmed.

---

[10] The more serious violations include calling a prison guard vile names and threatening to have him killed, as well as an assault on another inmate.  Poitra has been placed in solitary confinement, and he had to be restrained when he failed to comply with guards' orders during a fight, a very serious situation in a prison.  He was also found to have damaged prison property to pass contraband to other cells and to have been in possession of contraband.  This list is not exhaustive.